UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DEREK C. VICE, | ) | CIV. 09-5077-JLV |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER OF DISMISSAL |
| | ) | |
| DOUGLAS L. WEBER, Warden | ) | |
| for South Dakota Department of | ) | |
| Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

**INTRODUCTION**

Petitioner, a prisoner at the South Dakota State Penitentiary,

submitted a petition for writ of habeas corpus under 28 U.S.C. § 2254.

(Docket 1).  The petition and all related matters were referred to Magistrate

Judge Veronica L. Duffy pursuant to 28 U.S.C. § 636(b)(1)(B) and this

court's order of November 16, 2009.  (Docket 7).  Judge Duffy filed a report

and recommendation (Docket 20) recommending both Mr. Vice's petition

and the respondent's motion to dismiss (Docket 14) be held in abeyance

pending an evidentiary hearing on petitioner's claim of ineffective assistance

of state trial counsel.  (See Docket 20, pp. 22-23).  The court adopted the

report and recommendation to proceed with an evidentiary hearing.  (Docket

27).  Following completion of the hearing, Judge Duffy issued her report and

recommendation on September 29, 2010. (Docket 48).  Petitioner filed his objections to the report and recommendation under § 636(b)(1)(C).  (Docket 54).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1)(C), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is then required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.  The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

For the reasons stated, petitioner's objections are denied and the report and recommendation of the magistrate judge is adopted in its entirety.

## PETITIONER'S OBJECTIONS

Petitioner Derek Vice filed four objections to the report and recommendation of the magistrate judge.  (Docket 54).  His objections, although not concisely set out, can be summarized as follows:

1.  Petitioner did not agree to forego his direct appeal to the South Dakota Supreme Court;

2.  Petitioner's Sixth Amendment right to effective assistance of counsel was violated;

3.  Petitioner exercised reasonable diligence in an attempt to timely file his federal habeas petition; and

2

      4.   Petitioner's direct appeal ultimately would have been
         successful.

Id. Each of these objections will be addressed separately.

## 1.     PETITIONER DID NOT AGREE TO FOREGO HIS DIRECT APPEAL TO THE SOUTH DAKOTA SUPREME COURT

The essence of this objection is the magistrate judge made an erroneous credibility determination in accepting the testimony of Attorney Stephens over the testimony of Mr. Vice.  Id. at pp. 1-2.  Mr. Vice does not object to the magistrate judge's conclusion that "Mr. Vice's **sole** allegation in support of his request for habeas relief is that his Sixth Amendment right to effective assistance of counsel was violated when Mr. Stephens failed to pursue a direct appeal on his behalf."  (Docket 48, p. 42) (emphasis in original).  It is this "ineffectiveness of counsel" claim which Mr. Vice argues constitutes "extraordinary circumstances" in his failure to comply with the statutory requirements of 28 U.S.C. § 2244(d)(1).  The ineffectiveness of counsel issue turns on the credibility determination.

The magistrate judge gave credit to Mr. Stephen's testimony and did not give credit to Mr. Vice's testimony.  (Docket 48, p. 23).  Based on this comparison, the magistrate judge concluded "Mr. Stephens was not ineffective at all" in "implement[ing] his client's decision not to pursue a direct appeal."  Id. at p. 25.  Notwithstanding that decision, the magistrate judge also found if "the court [were] to credit Mr. Vice's testimony, an

attorney's failure to carry out a client's wishes when not accompanied by any fraud or deceit does not constitute the kind of extraordinary circumstances which justify equitable tolling." Id. at p. 26.

"[O]nce a party makes a proper objection to a magistrate's finding, including a credibility finding, the district court *must* make a de novo determination of that finding." Taylor v. Farrier, 910 F.2d 518, 521 (8th Cir. 1990) (emphasis in original). "The court need not conduct a de novo hearing, . . . but must nonetheless make a de novo determination of that finding based on the record." Id. (internal citation omitted). Section 636(b) of Title 28 of the United States Code "requires the district court to review *de novo* those portions of a magistrate judge's reports and findings which are objected to by a party." United States v. Storey, 990 F.2d 1094, 1097 (8th Cir. 1993).

"In conducting [de novo] review, the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Jones v. Pillow, 47 F.3d 251, 252 (8th Cir. 1995) (internal citation omitted). "[A] district judge must affirmatively state that he has read the transcript . . . ." United States v. Hamell, 931, F.2d 466, 468 (8th Cir. 1991).

Fed. R. Civ. P. 52(a)(6) provides, in relevant part, that "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless

4

clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."  Judging witness credibility is a multi-faceted process.

> When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. . . . This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness.  Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.

Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985) (internal citation omitted).

The court reviewed the transcript of the July 16, 2010, suppression hearing (Docket 44), the thirteen exhibits admitted at that hearing, and the entirety of State v. Vice, Crim. No. 06-3933, Seventh Judicial Circuit, Pennington County, South Dakota, the underlying state court criminal file ("CRI#06-3933").  The court takes judicial notice of the state court proceedings, including all pleadings, letters, transcripts, and the sealed presentence report, as being a material part of this federal habeas proceeding.  See Fed. R. Civ. P. 44(a)(1); Wilson v. Sigler, 285 F.2d 372 (8th Cir. 1961); and Starkweather v. Greenholtz, 267 F.2d 858, 859 (8th Cir. 1959).

During the federal habeas hearing, the magistrate judge considered the "demeanor, body language, and delivery" of both Mr. Vice and Mr. Stephens in deciding to credit Mr. Stephens' testimony over that of Mr. Vice. (Docket 48, p. 23).  As the reviewing court, this court "must give due regard to the [magistrate judge's] opportunity to judge the witnesses' credibility." Lesch v. United States, 612 F.3d 975, 980 (8th Cir. 2010) (citing Fed. R. Civ. P. 52(a)(6)).  While the court cannot consider body language, it does have the opportunity to judge the demeanor and delivery of both witnesses.

In listening to the FTR audio recording and reviewing the written transcript of the hearing before the magistrate judge, the court finds Mr. Stephens was candid about his shortcomings and specific in his recollection of his conversations with Mr. Vice.  Mr. Stephens was "absolutely" confident Mr. Vice's "decision . . . [was] not to file a Notice of Appeal." (Docket 44, p. 49).

On the other hand, Mr. Vice only had specific recall about his version of the facts regarding the underlying criminal conviction and his insistence on  wanting to file a direct appeal, but Vice was vague about the content of his conversations with his attorney.  The court's impression of Mr. Vice's testimony is that it was convenient, self-serving and generally not candid.

More revealing, however, are the exhibits in the case and the contents of the file in CRI#06-3933.  These materials are particularly enlightening

6

both as to credibility and the merits of Mr. Vice's federal habeas claim as

analyzed by the magistrate judge.

Just seven weeks after sentencing, on July 21, 2007, Mr. Vice wrote

state sentencing Judge Fuller.  (Exhibit 5 of the federal habeas hearing)

("FHH Exhibit ___").  That handwritten letter[1] is as follows:

> I am wrighting you this letter to ask you to help me with my curent situation.  I have requested a new attorney because Matt told me strait to my face **with my wife' present** that if I plead guilty He could get me probation/24/7 treatment.  I told him from the begining **I wasn't sure if that bag of drugs was mine** cause I own my own company and I have 4 people that work for me and all 4 use meth and all 4 use that car that car wasn't even my car.  But besides needing a new attorney cause he lied and won't take my calls I have tried to get him to work something out with the state for me to give up information.  I will do anything to get back to my wife and company.  Besides this prison is not giving me the mental health services I need.  I was on a specific medication last time and this time they won't give it to me plus, they won't let me leave Springfield for wright-ups I got last time I was in.   Your Honer I have been clean for 1 year all on my own.  I maid  the choice to clean up and God has removed the desire from my life.  Their is a lot better place's I could be over a little half gram please give me a chance.  Thank you Derek Vice.

Id. (emphasis added).

In an undated letter, Mr. Vice wrote to Judge Fuller again.  (FHH,

Exhibit 6).  That handwritten letter reads as follows:

> Dear Judge Fuller
>
> Could you please let me know if you are going to do something about this prison not treating my mental health needs or my

---

[1]Mr. Vice's letters are quoted as filed; grammatical and spelling errors are in original documents.

7

herniated disc in my neck and low back injurys!  I had to take Klonepin and Viloden and Wellbution last time I was here to help with my pain now the prison refuses to give me the meds.  Plus they are keeping me in Springfield for behavior I did last time I was in prison over 4 years ago not this crime.  Me and my wife are both having a very had time **for a half gram I'm not even sure that it was mine** I can't even get Matt Stevens to answer my calls or letter's.  I have requsited to appeal and also to be released on bond until my trial and Matt has not ansewerd nothing to over two mounths I don't believe I should have to go thru this much pain just cause the prison is worried about what meds they give when I had to take them for 4 years last time I was here and 1 of them for 18 months before I came in.  I know you said you would help if there was any problems and there defently is.

Thank you<br>Derek Vice

Id. (emphasis added).

In a letter date stamped by the prison post office as 09/25/07, Mr.

Vice wrote to Mr. Stephens.  (FHH, Exhibit 7).  That handwritten letter is as

follows:

Matt

I don't understand why I paid you 3000.00 Dollars to get 10 years in prison when I told you I would not plead guilty if it meant any prison time as far as Im concerned you have not done anything to earn that money. And I am requisting a refund of my money I have been here over 3 months and have not been in front of the judge for my appeal or to see if I can be released on bond for appeal. You have been told by my wife and mom and phone company that your phone is not taking calls from me if I do not hear from you soon I have no choice but to report you and your lack of dutys to the Stat Bar Ass.

Derek Vice

8

<u>Id.</u>  On September 28, 2007, Mr. Stephens wrote back to Mr. Vice.  (FHH,

Exhibit 8).  That letter in its entirety reads as follows:

> I recently reviewed with Judge Fuller the correspondence you sent
> to the Court complaining of the sentence you received and the lack
> of therapeutic treatment you were receiving there at the
> penitentiary.  I believe that Judge Fuller's intent was to file your
> letter in the file and to monitor your progress there in the
> penitentiary to ensure that your treatment is taking place as
> directed by the Court at the time of your sentencing.
>
> **Regarding the appeal, you and I discussed the grounds, or
> lack of grounds, for an appeal, and decided instead to pursue
> a modification once you were able to complete your treatment
> there in the penitentiary**.  I see of course from your address that
> you are presently at the Springfield State Penitentiary, which tells
> me that you are being fast-tracked towards treatment.  **In light of
> that, and also in light of our prior discussions regarding how
> to proceed after the conviction, your interests are best served
> seeking a sentence modification once you have completed
> treatment, rather than seeking an appeal where no
> meritorious grounds for relief exist.**
>
> I will direct my paralegal Brittany to contact the State Penitentiary
> in Springfield to schedule a phone conference, with you so that we
> might discuss this in more detail.
>
> I do want to briefly respond to your claim in your last letter to me
> wherein you claim that you are requesting a refund of your Three
> Thousand Dollars ($3000) because you received ten (10) years in
> the state penitentiary. First, let me correct the record as to the
> agreement between us.  As you know, and as reflected from our
> written agreement for criminal representation, you agreed to pay
> a retainer of Three Thousand Dollars ($3000), which retainer may
> or may not have covered the entire balance owed when the file was
> resolved.  Further, I explained at the onset that I was not in any
> way guaranteeing that you would avoid a penitentiary sentence,
> but I felt confident that we could certainly represent you and your
> interests in a way better than that representation you claimed to
> have been receiving at that time.

9

Further still, despite the agreement to pay a Three Thousand Dollar ($3000) retainer, you ultimately only paid Twenty-Five Hundred Dollars ($2500) over a course of time, and a remaining balance due is still owing to my office in an amount over Fifteen Hundred Dollars ($1500).  Further, the ten (10) years in prison to which you mentioned is actually a ten (10) year prison sentence with five (5) years suspended. With a parole eligibility of forty percent (40%), it is anticipated that you would serve two (2) years in the state penitentiary, less credit for time served of seventeen (17) days - enough time to get you through treatment and to benefit in Judge Fuller's eyes from a psychotropic medication regimen if that is appropriate.

Derek, I certainly understand and empathize with the fact that you are presently incarcerated in the state penitentiary. However, casting aspersions at the very people who are trying to assist you is not a recommended way to obtain relief.  Again, I will schedule a phone conference with you upon sending this letter to you, so that we might discuss these issues in more detail.  Thank you.

Id. (emphasis added).

Even though he had been communicating frequently with Mr. Stephens in the weeks and months following sentencing, Mr. Vice did not react in any fashion to the September 28 letter.  If Mr. Vice's version of his relationship with his attorney is to be believed, one would expect Mr. Vice to immediately attempt to telephone Mr. Stephens or promptly write to him disputing the contents of the September 28 letter.  Mr. Vice did neither.

Instead, Mr. Vice wrote to Judge Fuller again.[2]  (FHH, Exhibit 9). That letter states:

_____

[2]This letter was date stamped Oct 12 2007, by the Pennington County Clerk's Office.  (FHH, Exhibit 9).

10

This letter is to requist a new lawer and a hearing to requist bond pending appeal.  **I told Matt Stephens and his asstant 4 mounths ago this same thing but he refuses to do anything but tell me lies about what he said to me.  My wife was present when he garented me <u>no</u> prison time for this case that is the <u>only</u> reason I plead guilty** I know you have letters explaining what wen on so I won't take up your time I just need a new attorney to explain this all to the appeal court so could you please take some action since my attorney just wants to make up lies.

Thank you
Derek Vice

<u>Id.</u> (underlining in original; emphasis added).

Then on November 9, 2008, Mr. Vice wrote Attorney Stephens.  (FHH,

Exhibit 10).  The text of that handwritten letter is as follows:

This is a letter to let you know I have spoke with a lawer and he adviced me that you can file a motion to withdawl my guilty plea based on the fact that you guarented me no prison time for a sentence and we both know that didn't happen I would greatly apricate it if you would file that motion for me I have wrote Fuller several letters with no responce so Im asuming he will only address the issue's if they come from you. You are very awhere that the drugs in that car where not mine and the only reason I plead guily was the guranty of no prison it has bean about allmost a year all together I have been locked up and at 4 to 5 grand a week I have lost a large amount of money and my life over this so please choose to do the right thing and file that motion so I can have my day in court and prove my inocence

Thank you
Derek Vice

<u>Id.</u>  Again, there was no mention of Mr. Stephen's letter of September 28,

2007, and no denial of Mr. Stevens' summary of their earlier conversations

and Vice's decisions in his case.

11

At the federal habeas hearing, Mr. Vice denies there was ever any discussion about a waiver of his direct appeal or a sentence modification until "somewhere around September, after the rights had been lost." (Docket 44, p. 102:18-21). "That's the first time [Mr. Vice] recall[s] him saying anything about a modification." Id. at lines 21-22.

Mrs. Vice's letters to Judge Fuller do not provide any support to the claim she was a witness to Mr. Stephens' promise or guarantee of a probationary sentence. Mrs. Vice wrote to Judge Fuller on three occasions: May 23, 2007, July 4, 2007, and an undated letter received by the Pennington County Clerk's Office on July 30, 2007. See CRI#06-3933, entries 27 and 29, and Mrs. Vice's letter with the sealed presentence report.

One would reasonably expect if a spouse was a witness to an attorney's promise or guarantee of a probationary sentence and learned of the judge's pronouncement of a sentence of five years in prison, her letters would address this injustice. Instead, her letters speak only to Mr. Vice's past history of drug abuse, his revelation of finding religion and his work efforts. Id. If Mrs. Vice was a witness on this issue, one would reasonably expect she would have been a credibility witness at the federal habeas evidentiary hearing.

A review of the transcripts in CRI#06-3933 also weigh against giving Mr. Vice's testimony at the federal habeas hearing any weight whatsoever.

Mr. Vice was charged with a two-part indictment.  The initial indictment charged possession of methamphetamine, a class four felony,[3] and resisting arrest, a class one misdemeanor,[4] on July 18, 2006.  Id. at 001.  The part 2 information charged Mr. Vice with being a habitual offender as the result of a 1998 felony drug offense.[5]  Id. at 010.

At the state court change of plea hearing on May 8, 2007, Mr. Stephens set out the terms of the plea agreement.  The transcript reflects "Mr. Vice is pleading guilty to the Class IV felony, possession of a controlled substance . . . . Count 2 resisting [arrest] . . . would be dismissed; and the state has agreed essentially to comment generally upon the offense and not make a specific recommendation for sentence . . . ."  (CRI#06-3933, Transcript of Plea Hearing, p. 2:9-14).  As part of the plea agreement the part 2 habitual offender information would be dismissed.  Id. at lines 15-17.  Mr. Vice acknowledged this was his understanding of the plea agreement.  Id. at lines 18-20.

---

[3]Conviction carries ten years imprisonment and a twenty thousand dollar fine, or both.  SDCL § 22-6-1(7).

[4]Conviction carries one year in the county jail and a two thousand dollar fine, or both.  SDCL § 22-6-2(1).

[5]If convicted of being a habitual offender because of one prior felony, "the sentence for the principal felony shall be enhanced" to the next class.  SDCL § 22-7-7.  In this case, Mr. Vice's maximum sentence would have been a class 3 felony, which carries a fifteen-year prison sentence, a fine of thirty thousand dollars, or both.  SDCL § 22-6-1(6).

Judge Fuller advised Mr. Vice the maximum sentence "could be 10 years in the state penitentiary, $20,000 fine, or both." Id. at lines 21-25. Mr. Vice acknowledged he understood the possible sentence. Id. at p. 3:1-2. Mr. Vice confirmed his plea was a "free and voluntary plea." Id. at p. 3:16-19. He then pled guilty to the charge that "at or about the 18th day of July, 2006, [he] possessed methamphetamine . . . ." Id. at lines 20-23. Mr. Vice admitted possession of and knowing the substance was methamphetamine. Id. at lines 24-25 and p. 4:1-4.

At sentencing on June 1, 2007, Judge Fuller again advised Mr. Vice of the maximum penalty. (CRI#06-3933, Transcript of Sentencing Hearing, p. 2:8-12). With regard to the presentence report which had been prepared in anticipation of sentencing, Mr. Stephens' only correction was related to a "time served awaiting sentencing issue." Id. at lines 23-25 and p. 3:1-13. There were no other additions or corrections. Id. at p. 3:13-14. The judge and Mr. Stephens discussed at length Mr. Vice's criminal history. Id. at lines 21-25 through p. 7:12. During that colloquy Mr. Stephens specifically addressed sentencing, declaring "I'm asking for a probationary sentence. And when I say that, in looking at, like I said, the elephant in the room [Mr. Vice's criminal history], it maybe would seem out of place." Id. at p. 6:18-21. After pronouncement of the sentence, Mr. Vice's only concern related to

being granted a self turn-in date because of pending drug and alcohol
treatment.  Id. at p. 11:11-25 and p. 12:1-17.

The record reflects Mr. Vice is a person of average intelligence, who
had been in court on many previous occasions and had prior courtroom
experience with numerous misdemeanor convictions and at least one felony.
(Docket 44, p. 95:8-16).  In light of Mr. Vice's previous court exposure and
his aggressive efforts to communicate with Judge Fuller shortly after
sentencing, it seems improbable that Mr. Vice would not have spoken up at
either entry of his plea or at sentencing, or both, if he believed there was a
"deal" for a sentence of probation.  "[T]here was no evidence that any
promises were made as to what the sentence would be.  [Mr. Vice]
understood that the sentencing was entirely within the discretion of the trial
judge . . . and he was informed by the court of the maximum possible
sentence."  Hollis v. United States, 687 F.2d 257, 260 (8th Cir. 1982).  Both
Mr. Stephens and Mr. Vice may have hoped the sentence would be
probation, but the record is clear their expectation was not based on the
judge's discussion with the parties.  "The rule is clear that a defendant
cannot set aside a guilty plea merely because he relied on his attorney's
opinion that the sentence would be a lenient one."  Id.

This analysis of Mr. Vice's entry of the guilty plea is emphasized at
this juncture to highlight the credibility analysis the court conducts in light

of petitioner's objections to the magistrate judge's findings.  Mr. Vice is no more credible on his claim Mr. Stephens "promised" or "guaranteed" a probationary sentence than Mr. Vice is on his claim he never agreed to waive a direct appeal.

Also important in the court's credibility analysis is Mr. Vice's testimony during the federal habeas hearing that he did not possess or know there was methamphetamine in the car [despite his contrary statements to Judge Fuller] and there was "no positive methamphetamines in my system" at the time of arrest.  See Docket 44, pp. 84:3-23 and 92:4-5. This testimony is in direct contradiction to Mr. Vice's statements to the state court services officer who prepared the presentence report for sentencing. During the interview process, Mr. Vice discussed his methamphetamine use indicating "he first used at age 17 with his last use being on July 18, 2006, at the time of his arrest."  (CRI#06-3933, Presentence Report, p. 5) (emphasis added).

The court concludes Mr. Stephens' testimony is credible in all respects regarding his relationship and communications with Mr. Vice and that Mr. Vice's testimony is not credible.  The court finds Mr. Vice's decision not to file a direct appeal with the South Dakota Supreme Court was made following a discussion between Mr. Stephens and Mr. Vice immediately prior

16

to the expiration of the appeal deadline.  Mr. Stephens "merely implemented his client's decision not to pursue a direct appeal."  (Docket 48, p. 25).

Petitioner's first objection to the magistrate judge's report and recommendation is overruled.

## 2. PETITIONER'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED

"Mr. Vice's **sole** allegation in support of his request for habeas relief is that his Sixth Amendment right to effective assistance of counsel was violated when Mr. Stephens failed to pursue a direct appeal on his behalf." Id. at p. 42 (emphasis in original).  Mr. Vice's objection is that his "distrust and lack of confidence in Mr. Stephens should have been addressed prior to the expiration of [his] right to appeal . . . ."  (Docket 54, p. 3).  He claims the magistrate judge should have considered Rule 1.2 of the South Dakota Rules of Professional Conduct ("SDRPC") in light of the alleged breakdown in the relationship between Mr. Vice and Attorney Stephens.  Id.; see also Docket 41, pp. 18-19.

Mr. Vice failed to carry his burden of proof that there was a "fundamental disagreement with the client, [such that] the lawyer may withdraw from the representation" at the time the decision to not file a direct appeal was made.  Note 2 to SDRPC Rule 1.2.  State v. Irvine, 1996 S.D. 43, 547 N.W.2d 177, cited by Mr. Vice in his objection (Docket 54, p. 3), provides no support for his argument.  Based on the record, there was

17

no "breakdown in the attorney/client relationship," nor "an irreconcilable dispute regarding strategy," nor was Mr. Vice refusing "to cooperate with his attorney" when the direct appeal decision was made.  <u>Irving</u>, 1996 SD at ¶ 15, 547 N.W.2d at 181-82.

The court finds no ineffective assistance of counsel by Mr. Stephens in representing Mr. Vice.  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Accordingly, there is no equitable tolling of the statute of limitations based on ineffective assistance of counsel.  28 U.S.C. § 2244(d)(1); <u>Holland v. Florida</u>, _____ U.S. _____, 130 S. Ct. 2549 (2010).

Petitioner's second objection to the magistrate judge's report and recommendation is overruled.

## 3.   PETITIONER EXERCISED REASONABLE DILIGENCE IN AN ATTEMPT TO TIMELY FILE HIS FEDERAL HABEAS PETITION

Mr. Vice argues his "mental health and ability to timely file his petition is an unresolved question of fact that must be determined before the issue of reasonable diligence can be addressed."  (Docket 54, p. 3). Because the court agrees with the magistrate judge on Mr. Vice's fourth objection, success on the merits, the third objection is moot.

## 4.   PETITIONER'S DIRECT APPEAL ULTIMATELY WOULD HAVE BEEN SUCCESSFUL

Petitioner argues his direct appeal "would have been successful on direct appeal to the South Dakota Supreme Court."  (Docket 54, p. 3).  If a

18

direct appeal had been taken, the South Dakota Supreme Court would have had all of the state court file and associated information discussed above available for its review.

First, Mr. Vice cannot prevail on this claim because, with the advice of counsel, Mr. Vice made a conscious decision to forego a direct appeal. See infra pp. 16-17.

Second, after reviewing the record and transcript of both the plea and sentencing hearings, the court agrees with the findings and conclusion of the magistrate judge that Mr. Vice's plea was voluntarily entered and he understood the consequences of his guilty plea. (Docket 48, p. 49).

The court also agrees with the magistrate judge that the sentence imposed by the state judge would not have been vacated on appeal. Id. The sentence imposed was within the statutory maximum and, based on Mr. Vice's criminal history, was neither unreasonable nor excessive. Mr. Vice failed to show the state court lacked jurisdiction or that a constitutional violation occurred because of the sentence imposed. Gleason v. Welborn, 42 F.3d 1107, 1112 (7th Cir. 1994).

Petitioner's fourth objection to the magistrate judge's report and recommendation is overruled.

**ORDER**

Accordingly, it is hereby

ORDERED that the report and recommendation (Docket 48) is adopted in its entirety.

IT IS FURTHER ORDERED that Mr. Vice's objections to the report and recommendation (Docket 54) are overruled.

IT IS FURTHER ORDERED that respondent's motion to dismiss the petition on the merits (Docket 14) is granted.

IT IS FURTHER ORDERED that respondent's motion to dismiss the petition on statute of limitations grounds and procedural default grounds (Docket 14) is denied as moot.

IT IS FURTHER ORDERED that the petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody (Docket 1) is dismissed on its merits and with prejudice.

IT IS FURTHER ORDERED that Mr. Vice's motion to amend his petition (Docket 40) is denied as moot.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c) and Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the court declines to issue a certificate of appealability as Mr. Vice has not made a substantial showing of the denial of a constitutional right.  Mr. Vice may timely seek a certificate of appealability

20

from the Court of Appeals for the Eighth Circuit under Fed. R. App. P. 22.

See Rule 11(a) of the Rules Governing Section 2254 Cases in the United

States District Courts.

Dated March 15, 2011.

BY THE COURT:

*/s/ Jeffrey L. Viken*
_____

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE